## Snyder v. Snyder.

(Decided Nov. 30, 1934.)

THOMAS C. FISHER and J. BALLARD CLARK for appellant.

D. E. WOOLDRIDGE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, Louis Snyder, is the father of the appellee and defendant below, J. E. Snyder. Plaintiff owned a farm containing about 140 acres in Oldham county, upon which he and his wife resided. Their children scattered and married; two of whom were residing in Florida and one of them was and is defendant. On December 5 of that year the wife of plaintiff died, and most of their children, including defendant, attended the funeral. On the same or the next day plaintiff, defendant, and a brother of the latter went to the home of plaintiff, which had been closed for a few days on account of the funeral and burial, both of which were in another county at the home of another son. During the short stay there, and while the other son was preparing a scant noonday meal, defendant claims that his father executed and delivered to him a somewhat remarkable paper that defendant claims is a contract, and which is in these verbatim words:

"I the undersigned Louis Snyder am of sound mind full owner of farm stock and tools do this day make agreement with J. E. Snyder if he will leave his home at Miami, Fla. and come to look after my affairs hear at Skylight I want him to sign all my paper check etc for me as his mother did her life time and I agree to make him Administrator of my estate if they be Eny at my death. I give him free and clear 4 shoates 4 cows

1 Bull 1 Steer 1 Heifer, 1 mare 1 Old mule calves if there be any at date he can come and take Possession He is to have full Possession and management of Every thing all furniture I give Except what all ready belongs to him I reserve the right to what is in my room an my old Buggy and all I want and nead in return is a Place to sleep and what I Eat I father agree to give him Joint deed of ½ interest in the farm if he will exsept my Proposition I agree to give said J. E. Snyder signed Paper covering all of these Points on his arive hear this agreement is to be a secret between he and I until he and his wife arive hear he is to on his return to Miami Fla. make this known to his wife Lula I give said J. E. Snyder time untill the first of April 1, 1930 to arrange his affares in Florida I father agree if he will have his wife come before the April date I will Pay in cash her transportation and all Expences from the Point in Florida to my home.

"I have $1000.00 in the Bank of Prospect Prospect, Ky. that can be used for Expences in the farm, etc.

"I also have mentioned this day that at some later date that we will fix things so that said J. E. Snyder can own the Entire farm.

his

Louis X Snyder."

mark

Shortly thereafter the wife of defendant came to the home of plaintiff, and she was soon followed by her husband, the defendant, and they took up their abode in the ancestral home. In the spring of 1930 defendant bought a tractor to be used on the farm for which he agreed to pay $1,100, $751 of which was a deferred payment evidenced by defendant's note. When it became due and the holder would no longer renew it but insisted on its payment, defendant applied to his father for the funds to discharge it, and the latter issued his check on a bank in which he had previously made a time deposit of $1,000 drawing 4 per cent. interest; but, in order to convert it into a checking account so as to be able to advance the money to his son, the father changed it from a time deposit to a checking one, and which was done at the instance of defendant, the check being given on July 15, 1931, and which was the day that defendant's note was taken up and marked "paid."

This action was filed by plaintiff against defendant

to recover the amount of that check, and is based upon an account; it being charged that defendant agreed to execute his note therefor, but has since declined to do so. The defense was that under the alleged contract, supra, it was the duty of plaintiff, after already being stripped of practically all he had, under that most peculiar document, to pay also all expenses of the operation of the farm by defendant (but which is doubtful from the writing itself), and that he (defendant) had expended the amount of the check for such purposes during the year 1930, the first one of his occupancy of the farm, and that the check was given in remuneration of such expenses paid by him. A reply denying that defense made the issues, and upon trial before a jury there was a verdict for defendant followed by an order dismissing plaintiff's petition, and, his motion for a new trial having been overruled, he prosecutes this appeal.

A motion made in this court to strike the bill of exceptions from the record was passed to a hearing upon the merits, and it will first be disposed of. The trial was had at the February, 1933, term of the Oldham circuit court and on March 2, 1933. The motion for a new trial was filed on the next day, but it was continued until the following May term of the court, at which time it was amended so as to include the additional ground of newly discovered evidence. On the 26th day of May of that year it was overruled, with exceptions, and plaintiff was given until the third day of the next October regular term to prepare and file his bill of exceptions and transcript of the evidence. The latter had not been taken by a stenographer and on the day of the October, 1933, term of the court, to which time had been given for that purpose, plaintiff tendered a bill of exceptions and evidence prepared in long hand by his attorney, and which the latter claimed was correct. The court took time to examine it, and on the next day (October 26th) it entered this order: "This action coming on to be heard on plaintiff's motion to sign and enter the Bill of Exceptions tendered herein on the third day of this October, 1933, term, and the court being sufficiently advised it is ordered that said motion be and the same is hereby overruled because the Court has no recollection of the evidence or facts, and plaintiff is permitted to withdraw the tendered bill without leaving a copy thereof." Later, and on that same day a final order of adjournment of the term was made.

Two days thereafter, and on October 28th, pursuant to notice given, plaintiff presented to the presiding judge of the court his bill of exceptions certified to by bystanders, and asked that it be filed; whereupon the judge wrote and had entered on the record this order: "On motion of the plaintiff by counsel, in vacation, pursuant to notice it is ordered that the plaintiff's bill of exceptions, signed and sworn to by two by-standers, be and the same is hereby filed, to all of which the defendant by counsel excepts." Seven days thereafter, and on December 4, 1933, defendant filed with the clerk of the Oldham circuit court what he termed his bystander's bill of exceptions; but which was never ordered filed by the presiding judge, as was done with plaintiff's similarly prepared one, and it is in such conglomerated condition that the record is brought here. We take judicial notice of regular terms and days for holding circuit courts, and from it we learn that the regular October term of the Oldham circuit court begins on the fourth Monday of that month and continues for twelve juridical days. Therefore the adjournment of the 1933 term of that court was on its third day, leaving nine vacant days allotted for that term remaining after the order of final adjournment. In other words, the time allotted for holding that term embraced the day (October 28th) on which the presiding judge thereof ordered and directed plaintiff's bill of exceptions to be filed, and which was done in accordance therewith. Moreover, if there existed sufficient doubt to authorize the disallowance of such proceedings as were had in the trial court, then, under the facts of the court's absolute refusal to either sign or correct and sign plaintiff's tendered bill of exceptions within the time given therefor, his later filing of his bill of exceptions in this court (it being a part of the record filed by him) was sufficient under the rule announced by us in the case of Thompson v. Tyrie, 200 Ky. 741, 255 S. W. 526. That opinion points out other remedies open to plaintiff under such circumstances, one of which is an application to this court to require the trial judge to correct and sign the bill of exceptions as prescribed in section 337 of the Civil Code of Practice; but the Thompson opinion holds in effect that they (additional remedies) are not mandatorily required to be followed, and, in view of all the facts in this case, we have concluded that the motion to strike the bill of exceptions should be, and it is, overruled. Furthermore, inasmuch as defendant swears

to the correctness of the alleged contract, supra, and the receipt hereinafter mentioned, in certifying to his alleged bill of exceptions, we will consider both of them as being properly in the record; they also having been introduced and their correctness verified by him. We will now briefly determine the merits of the case.

The original motion for a new trial contained only two grounds, which are thus stated: "1. Misconduct of the jury, in that the jury was and is unduly sympathetic with debtors and was and is loathe to give a verdict on a debt to the great damage to the plaintiff. 2. That the verdict is not sustained by sufficient evidence and is contrary to law." They, as we have hereinbefore stated, were later supplemented by a third one of alleged newly discovered evidence. But, since we have concluded that ground 2 is sufficient to authorize a reversal of the judgment, neither of the other two will be considered, although it might be stated that the first one is a total stranger to us. Plaintiff testified that he loaned the amount sued for to defendant and gave the latter his check therefor, and that he never agreed in writing or otherwise to defray the expenses of the operation of the farm by defendant. Indeed, he denied the above-inserted alleged contract in toto, and said that the entire understanding was exclusively verbal. He was fortified in that respect by his other son who was at plaintiff's home at the time the alleged contract is claimed to have been prepared and signed. That son stated that nothing of the kind happened, and that all of the three were practically together during the entire time while they were at plaintiff's residence. Plaintiff stated that prior to his wife's death he had deposited in the bank $1,000, and arranged so that it would draw 4 per cent. interest producing $40 annual income for him, and which he concluded was sufficient to supply him with clothing, and that he arranged with defendant to supply him with lodging and board. In consideration therefor he agreed to turn over to defendant all of the farm tools and implements, as well as practically all of the stock and fowls on the farm, and that the latter would defray the expenses in cultivating the farm and become entitled to all of its net proceeds. The only modification thereof by increasing plaintiff's obligations was attempted by defendant himself, but which was done in such an incredible manner as to entitle it to little weight.

Plaintiff testified (and defendant admitted it) that the note that defendant executed for the deferred payment on the tractor was bearing 7 per cent. interest, and that he was induced to change his interest-bearing deposit account to a general one and to advance the amount of the note to his son because the latter agreed to continue to pay him the 4 per cent. the bank was paying and thereby save for himself the extra 3 per cent. interest that he was paying on his past-due note, and that, for the purpose of so accommodating his son, and also to prevent legal proceedings against him to collect the note, he agreed to the arrangements and gave to him the check. If defendant was correct in his theory of the case, then he would be compelled to have had as much as the alleged expenses for operating the farm over and above what he raised thereon when he came to plaintiff's house, but which was not shown, but the contrary was proven. Not only so, but it is peculiarly strange that defendant postponed calling upon his father to discharge his (plaintiff's) alleged obligations in what defendant claims to have been the contract until July 15, 1931, the exact day when defendant's note had to be met. Still more incompatible with usual human conduct is it that plaintiff, who was too old to work himself, would strip himself of practically every vestige of his personal property, and also agree to convey the title to his farm (without reserving to himself any of its proceeds) and at the same time obligate himself to defray all expenses of its operation for the pitiful consideration of only bed and board.

Defendant himself introduced, not only the alleged contract, but also another writing which he himself had signed and which is thus phrased: "July 15, 1931, received of Louis Snyder $760.00 Ck for $730.00 cash E C H $21.00 cash due by J. E. S. $9.00 [signed] J. E. Snyder." The $21 mentioned in that receipt was a part of the 4 per cent. interest due plaintiff which had been paid by the bank to defendant, and the $9 mentioned therein was cash advanced by plaintiff to defendant. It will be noticed that it purports to be a receipt executed to plaintiff by defendant, but which the former denies ever having seen until it was introduced at the trial. Defendant claimed, however, that, notwithstanding plaintiff left the home and moved to that of his son in Jefferson county in August, 1932, when he carried with him all of his private papers, he omitted to carry this re-

ceipt, which he left upon the mantle in his occupied room, where defendant found it. Another circumstance appearing in the record is, that plaintiff took defendant's deposition a few days after the action was filed on cross-examination, and in it he stated nothing about the alleged written contract which he introduced ten days thereafter at the trial on March 2, 1933; the deposition having been taken on February 20th prior thereto. Neither did he in that deposition exhibit any of the alleged expenses for operating the farm and constituting the amount which he later contended at the trial was due him from his father, and which, as he claimed, was the consideration for the amount of the check sought to be recovered in this action. But, apart from such considerations, and viewing the alleged contract, the genuineness of which is so much shrouded in doubt, from its contents alone, we are led to believe that no reasonable individual would have ever consented to its obligations as its harsh terms imposed upon plaintiff. It will be perceived that they deprive him of all prospects of future comfortable living, and even take away from him every opportunity of supplying himself with the actual necessities of life, and eventually obligate him to vest the title to his entire farm in defendant to the exclusion of all other expectant heirs, to say nothing about immediately making defendant an equal joint tenant in the title thereto. We have no doubt that plaintiff offered his son and the latter's wife a liberal proposition to move into his house and to furnish him only board and lodging in consideration of such liberal offer which he admits, and to which he testified; but he denies, and which we think the evidence and developed circumstances sustain, that he turned over to his son every vestige of property he possessed, both real and personal, or that he obligated himself to keep up the farm and to pay all expenses of its operation as is claimed by defendant under the alleged written contract. Its genuineness is furthermore rendered doubtful because of its provisions as to secrecy of its execution and also its terms, as well as other considerations hereinbefore referred to. We do not hesitate, therefore, to conclude that the verdict is flagrantly against the evidence as contained in the record filed in this court.

Wherefore the judgment is reversed, with directions to sustain the motion for a new trial, and for proceedings consistent with this opinion.