## Snyder v. Snyder et al.

(Decided June 1, 1937.)

FISHER, BARRICKMAN, WATKINS & SEIDMAN for appellant.
D. E. WOOLDRIDGE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

Louis Snyder is appealing from a judgment dismissing his petition as amended against J. E. Snyder and Lulu Snyder, his wife, wherein he sought to have a deed purported to have been made by him to J. E. Snyder for a farm near Skylight in Oldham county, Ky., canceled and set aside or to have J. E. and Lulu Snyder reconvey the land to him; and further adjudging J. E. Snyder to be the owner of the land described in the deed. He alleged that he did not sign or acknowledge the deed or that, if he had signed it, his signature was procured by fraud, misrepresentation, and deceit when he thought he was signing something of a different nature or character.

For many years prior to December 5, 1930, appellant and his wife lived on the farm in controversy which contains about 140 acres and which is improved by a residence, barns, and other outbuildings. All of their children were grown and had left home. On December 5, 1930, Mrs. Snyder died in a hospital in Louisville. Appellee J. E. Snyder, son of appellant, who resided in Miami, Fla., was called to Kentucky on account of the illness of his mother and remained until after her death. Two or three days after the death of Mrs. Snyder, appellant and J. E. Snyder entered into some sort of agreement under which the latter and his wife left their home in Miami and came to Kentucky to take over the operation of appellant's farm. Appellant made his home with them until August, 1932, when he went to the home of his son Will Snyder, who lives at Avoca in Jefferson county. While there the controversy over the deed arose and he has never returned to his old home.

In October, 1932, appellant instituted an action at law against appellee to recover $751 which he had lent him. Appellee denied that his father had lent him that or any other sum and set up and filed with his answer a written agreement which he alleges his father had signed by mark and wherein it was agreed and provided

that $1,000 which appellant had on deposit in a bank might be used for expenses in operating the farm and maintaining the home for the first year.

On appeal from a judgment adverse to appellant, this court in an opinion reported in 257 Ky. 148, 77 S. W. (2d) 404, reversed the judgment on the ground that the verdict was flagrantly against the evidence. On a return of the case to the lower court a second trial resulted in another verdict and judgment for appellee, and on a second appeal that judgment has been reversed by an opinion this day handed down on the ground that the verdict was flagrantly against the evidence. 269 Ky. 540, — S. W. (2d) — . Substantially all the evidence introduced on the trials of the common-law action was introduced in this action. The written contract under which appellant claimed to have taken over the operation of his farm is set out in full in the opinion on the first appeal of the common-law action and the evidence concerning its alleged execution and all the facts and circumstances attending the alleged execution of the contract as well as the transaction between the parties involved in the common-law action are referred to and discussed at length in the opinions on the two appeals of that case, therefore our statement of the evidence will be confined to additional evidence concerning matters involved in this action except so far as may be necessary in a discussion of questions raised in brief by counsel for respective parties. For an understanding of all the evidence heard in this case reference is made to the opinions on appeal of the common-law action. In addition to the allegations hereinbefore referred to it was alleged in the petition as amended that the farm in controversy was reasonably worth $8,500 and there was no consideration for the conveyance claimed by appellee; that appellee had placed the purported deed to record and had tendered and offered to appellant his personal notes totaling $2,000 which appellant declined to accept and had theretofore tendered and still tendered back to appellee the notes but that the tender had been refused; that the reasonable rental value of the farm was $500 per year; and that appellee had cut and sold timber off the farm of a value of $300.

After the demurrer to the petition and motion to elect had been overruled, appellee by answer and counterclaim as amended denied the allegations of the petition as amended and further alleged that on January

20, 1931, appellant and J. E. Snyder entered into a written contract whereby the former sold to the latter the farm in question for the consideration of $2,000, evidenced by five notes of $400 each, without interest until after the death of Louis Snyder, and the further consideration that appellant was to have a home with J. E. Snyder; that J. E. Snyder was to go to LaGrange, Ky., and have J. B. Clark, an attorney there, to prepare for appellant a deed conveying the property to J. E. Snyder, which the appellant agreed to sign and acknowledge before Carl Hogoland, a notary public at Prospect, Ky.; and that, if anything happened that appellant did not sign the deed, he would pay to J. E. Snyder the sum of $1,000 and the contract would be treated as a note for such sum payable within a reasonable time thereafter; that pursuant to such contract J. E. Snyder did have the deed prepared by the attorney and on the same date it was turned over to appellant who examined it and stated it was perfectly satisfactory and he promised and agreed to go before the notary designated and acknowledge it, but because of indisposition postponed from time to time and failed to acknowledge same although repeatedly urged to do so by appellee; that he did sign the deed by mark and delivered same to appellee J. E. Snyder on the 19th day of October, 1931, and his signature was witnessed by appellees, and that they in person appeared before the county court clerk of Oldham county on October 22, 1932, and under oath duly proved the signature of appellant as grantor, and the deed thereupon was admitted to record; that, by mutual mistake of the parties, the draftsman who prepared the deed failed to retain a lien on the land thereby conveyed to secure the payment of the five notes aggregating $2,000 or to insert any provision concerning the right of appellant to have a home with appellee or any lien to secure him in such right.

By reply traversing the affirmative allegations of the answer and counterclaim the issues were completed. The contract of January 20, 1931, referred to in the pleadings of appellee and which is found in the record reads:

"I the undersigned Louis Snyder by mark do this day January 20th 1931 authorize J. E. Snyder whom I have given full privilege to sign my papers to go to Lagrange Ky. and have deed made to this farm which we both live I want him to see J. Bal-

lard Clark to attend to this for me I will go with him to se Carrl Hogland Banker of Prospect Ky the first fare day and sign deed.

"I have this day sold the said J. E. Snyder this farm for the sum of $2000.00. He is to give me 5 five notes of $400.00 each without interest untill after my deth. I further agree that if anything might happen that I do not sign this said deed that this paper is to answer as a note for $1000.00. I do this so he can continue living her. I aim to live with him what time I want to untill deth.

"Witness

his

Louis X Snyder.

Mark

"Lula Snyder"

Appellant emphatically denied that he signed this contract or the deed or the contract set out in the opinion on the first appeal of the common-law action. His evidence concerning the agreement under which appellee came to his farm is substantially the same as that given by him on the trial of the other action; that he never heard of the claim that he had signed the deed until after he had gone to visit his son Will in August, 1931, when an attorney wrote him. He stated that he did not know his son had had the deed prepared until some time in 1931 when his son presented it and asked him to sign it, which he refused to do. On September 27, 1932, an attorney for J. E. Snyder wrote appellant in care of his son Will at Avoca, stating that J. E. Snyder had placed with him for attention and settlement the matter of contract and agreement of the parties respecting the farm and personal property. Reference was made in the letter to the deed executed and delivered under date of January 22, 1931, which was witnessed and might be recorded in its present form; that J. E. Snyder had the five notes ready to deliver to appellant and was holding them for him and was ready to comply with his contract to furnish appellant board and room and requested that appellant call at the office of the attorney and obtain the five notes. Later the notes were mailed to appellant. Concerning the contract dated January 20, 1931, J. E. Snyder testified that it, like the contract under which he came to his father's place, was written and signed in the dining room at the home on the farm; that appellant suggested the contract and dictated the terms thereof; that he signed the name

of Louis Snyder but the latter touched the pen when he made the mark; that the contract was read over before it was signed and no objection was made to it by his father; that his wife was not present when the contract was signed because his father wanted to do everything "behind everybody's back"; that his wife came through the hall from upstairs as he made his mark, and "L think she will bear me out in that statement." According to his evidence the same secrecy surrounded the execution of the deed except that he claims his wife was present and witnessed his father's mark. He further stated that his father could read and write and could sign his name but, because of the effort entailed and the imperfection of his signature, he preferred to sign by mark.

The attorney referred to in this contract dated January 20, 1931, did prepare the deed at the request of J. E. Snyder, but appellant was not present and never talked with the attorney about the preparation of the deed. Except for the deed and the evidence of a few witnesses that appellant had stated that he had turned everything over to his son, there is no evidence save that of J. E. Snyder that his father signed the deed or that he signed the contract on which the deed is said to have been based. On the other hand it is shown by the evidence of Will Snyder, his wife, and son, as well as by the evidence of two or three disinterested witnesses, that appellant left home on December 31, 1930, and went to the home of Will Snyder at Avoca which was several miles away to have his birthday dinner on January 1 and remained there continuously until February 2. The disinterested witnesses referred to were friends and acquaintances of Will Snyder, some of whom had occasion to be at his home every day, either purchasing or delivering milk, and they are postitive in their statements that appellant was there the entire month of January. If this be true appellant did not sign the contract in the dining room at home on January 20, 1931.

J. E. Snyder testified that, when this contract was signed, he took it and put it in his pocket and we assume that, if it was in fact executed, he had it with him when he had the attorney prepare the deed. It is significant indeed that the attorney in the preparation of the deed overlooked every consideration for its execution and the only things that would be of importance or con-

cern to appellant. J. E. Snyder testified that years before when he was at work on his father's farm the latter made trouble and ran him away and this happened more than once. He testified that, after he went there this time, his father threatened to kill him with a club. In this case and for the first time he assigned as a reason for his father leaving and going to the home of his other son was that the father became angry because he reprimanded him for making improper advances to his wife.

On motion of appellees the court as an issue out of chancery submitted to a jury whether or not appellant signed the contract of January 20, 1931, and the deed referred to in evidence and the jury found that he did; and it is contended by appellees that, even though this court is not bound by the chancellor's finding on issues of fact, the finding of the jury should not be disturbed because it is supported by substantial evidence.

In addition to the evidence hereinbefore referred to appellant took the evidence of a fingerprint expert from the police department of Louisville. He testified that he took the fingerprints of appellant and that he treated the documents introduced in evidence in the approved way to bring out fingerprints thereon. He stated that a very light touch in handling a paper would leave fingerprints which it would be difficult to obliterate or remove; that he did not find appellant's fingerprints on either of the contracts or on the deed; that a number of fingerprints appeared on some of the writings. It was shown that some of the writings had been handled by a number of persons and that the first contract referred to and set out in the opinion on the first appeal of the common-law action was handled by the jurors who tried the case before it was examined and treated by the expert to bring out the fingerprints; but he testified that fingerprints of one person could be traced on documents where that of others had been made over it.

Summing up, we have on one hand the evidence of J. E. Snyder that his father signed these two contracts and the deed by mark. His signature to the first signed by mark and without a witness, the second signed in the same way, witnessed by the wife who was not supposed to be present but who happened to pass through a hall adjoining the dining room just at the time appellant was touching the pen. The deed signed by mark and witnessed by appellees only. There was also evidence

of neighbors that, in talking about his farm affairs, appellant stated that he had turned everything over to J. E. Snyder and this, notwithstanding the evidence of J. E. Snyder that his father desired that the transaction be kept a profound secret. Under the agreement that appellant admits he made with appellees that they take charge of the farm and get all the proceeds from it and that he would turn over to them all the implements and most of the livestock and only asked that he have a home, he might have well and truthfully said to his neighbors that he had turned everything over to his son; and therefore little importance is to be attached to their evidence.

On the other hand we have a man well past 70 years of age whom it is claimed executed most unusual contracts under very suspicious circumstances, giving away practically everything that he had. No mention is made in the deed of a consideration except "a valuable consideration, cash in hand paid, the receipt of which is hereby acknowledged." If J. E. Snyder had the contract of January 20, 1931, which he claims was made the night before the deed was executed, he certainly would not have overlooked so important a matter as the consideration until after he claimed the deed was executed. By a very great and preponderating weight of evidence it is indicated that appellant was not at home on January 20, 1931, when it is claimed he signed the contract in the dining room. If J. E. Snyder had had previous trouble with his father over business transactions and was run away from home, and if the extreme secrecy attending the execution of these contracts was occasioned by fear that the other children would give trouble, J. E. Snyder must have realized that he might again have trouble with his father and that the transactions would ultimately come to light and the documents would be questioned by the other children. It does not stand to reason that with such knowledge and in such circumstances he would accept documents of so much importance to him with only the signature of his father by mark without some disinterested witness or without a notary to take the acknowledgment. If his father could in fact sign his name, as appellee testified he could, it is unbelievable that appellee would permit him to sign by mark in the circumstances shown rather than have him sign his name, even though it might be an imperfect scrawl. In view of the unreasonableness and the inequity of the transaction and all

656

the doubtful circumstances referred to in this and in the opinion in the other case, in which it was held that the verdict was flagrantly against the evidence, we have no hesitancy in holding that the verdict of the jury on the issues out of chancery in this case is even more so. It follows therefore that the judgment cannot be sustained. However, it is our conclusion that, even under the agreement which appellant claims he made with appellee, he would not be entitled to recover rents, nor under the proof do we think he would be entitled to recover anything for timber alleged to have been cut and removed from the farm.

Wherefore, the judgment is reversed with directions to enter judgment granting to appellant the relief sought, except as to matters of rent and timber cut and removed.